1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8                  NORTHERN DISTRICT OF CALIFORNIA
9

10   MIRIAM ANDRADE,                         Case No. 15-cv-03175 NC
11                  Plaintiff,
                                             **ORDER GRANTING IN PART,**
12        v.                                 **DENYING IN PART, PLAINTIFF**
                                             **ANDRADE'S MOTION FOR**
13   ARBY'S RESTAURANT GROUP,                **DEFAULT JUDGMENT AGAINST**
     INC., ALTAMIRA CORPORATION,             **ALTAMIRA CORPORATION**
14   and PEDRO MOTA.
                                             Re: Dkt. No. 87
15                  Defendants.
16

17

18        Plaintiff Miriam Andrade moves for default judgment against her former employer,

19   Altamira Corporation.  Dkt. No. 87.  Andrade alleges various federal and state Labor Code

20   violations by Altamira.  She also alleges that Altamira should be liable for sexual

21   harassment committed against her by her supervisor Pedro Mota.  Based on Altamira's

22   failure to defend itself against the motion, the Court finds default judgment against

23   Altamira is proper.

24        The Court finds Altamira liable for Andrade's claims of (1) sexual harassment in

25   violation of the California Fair Employment and Housing Act ("FEHA"), (2) sexual

26   battery; (3) assault; (4) failure to pay wages in violation of the California Labor Code and

27   federal Fair Labor Standards Act ("FLSA"), (5) liquidated damages under the FLSA and

28   Labor Code, (6) failure to provide uninterrupted meal breaks in violation of the Labor

Case No. 15-cv-03175 NC

United States District Court
Northern District of California

Code and Industrial Welfare Commission ("IWC") wage orders, (7) waiting time penalties under the Labor Code, (8) failure to provide accurate wage statement under the Labor Code, (9) penalties for the underpayment of wages under the Labor Code, (10) violations of California Business and Professions Code § 17200 *et seq*. for unlawful business practices, (11) unlawful retaliation, and (12) wrongful terminated in violation of public policy.  In light of these findings, the Court awards Andrade $72,962.63 in damages.  Her attorneys, Kletter + Nguyen Law LLP are awarded $42,855.00 in attorneys' fees and $2,722.47 in costs.

## I.    BACKGROUND

Andrade worked for Altamira between February 2, 2014 and April 17, 2015, when she was terminated.  Dkt. No. 101 ("Hearing Transcript") at 8; Dkt. No. 87-2 at 2 (showing Andrade's paystub for the pay period of February 1-15, 2014); *but see* Dkt. No. 16 at 4, 7 (First Amended Complaint, "FAC") (stating Andrade began working at Arby's on February 19, 2014).  During this period, Andrade worked for an Arby's Restaurant owned by Altamira, in Sunnyvale, California.  FAC at 2; Dkt. No. 18 at 2.  The following chart illustrates Andrade's three positions and two promotions.

| Dates Worked | Position | Hourly Rate |
|---|---|---|
| February 2 – 28, 2014 | Sandwich Preparer | $8.50 |
| March 1 – June 15, 2014 | Sandwich Preparer | $9.00 |
| June 16, 2014 – January 15, 2015 | Cashier | $10.00 |
| January 16 – April 17, 2015 | Shift Lead | $11.00 |

Dkt. No. 87-2; Hearing Transcript at 8-11, 25.

Andrade alleges that as a non-exempt employee, she was not paid at the statutorily mandated minimum wage for all hours worked, including overtime, and did not receive an uninterrupted 30-minute lunch break during each major fraction of five hours work.  FAC at 4-5.  Andrade was not paid for missed meal breaks.  *Id*. at 5.  Andrade also alleges that Altamira did not accurately record the hours she worked or breaks not taken.  *Id*. at 6.

Case No. 15-cv-03175 NC              2

United States District Court
Northern District of California

1    Andrade further alleges that Pedro Mota, her supervisor, subjected her to sexual

2  harassment by asking her out on dates, making comments about her body, sending

3  personal text messages, and trying to touch her.  *Id.* at 20-21.  According to Andrade,

4  despite telling Mota to stop asking her out and texting her, he persisted.  *Id.* at 21.  She

5  testified as to an incident in June 2014, in which Mota grabbed her from behind, hugged

6  her while putting his hand on her stomach, and kissed her neck, pursued her as she

7  attempted to escape, and then cornered her and continued grabbing and kissing her before

8  she was able to flee.  *Id.* at 25, 38-40.  Andrade testified she reported this incident and the

9  unwanted texts and stares to Miriam Riefkohl, a shift supervisor.  *Id.* at 23.  However, to

10  Andrade's knowledge, no one investigated the incident, and she told no one else.  *Id.* at 24.

11  In July 2014, Altamira promoted Andrade to shift lead.  *Id.* at 25.

12    On April 3, 2015, Andrade participated in sending a notice to Altamira that the

13  employees intended to unionize and complaining of the "abusive work environment"

14  caused by Manager Amandip Kaur's physical abuse of employees in the work place.  FAC

15  at 7.  Andrade alleges Kaur "confronted her," asking if she had seen Kaur hit employees.

16  *Id.*  When Andrade answered she had, Kaur "started screaming at" her, telling her she

17  would be terminated soon.  *Id.*  Altamira terminated Andrade on April 17, 2015.  *Id.*

18    Andrade originally filed this case in Santa Clara County Superior Court pleading

19  California state and federal law claims.[1]  Dkt No. 1.  Then-defendant Arby's Restaurant

20  Group removed this case.  *Id.*  The Court granted defendant Arby's motion to dismiss on

21  the grounds that Andrade had not alleged sufficient facts that it was her employer at the

22  time of the events.  Dkt. No. 43.  Though the Court gave Andrade leave to amend her

23  complaint to plead such facts, Andrade did not.

24    The operative complaint is the First Amended Complaint.  FAC.  Altamira and

25  Pedro Mota answered the First Amended Complaint.  Dkt. No. 18.  Altamira, which is not

---

[1] In response to the Court's Order to Show Cause to prove the exhaustion of administrative remedies before filing claims alleging violations of the Fair Employment and Housing Act, dkt. no. 93, Andrade provided the Court with California Department of Fair Employment and Housing right to sue notices.  Dkt. No. 95.

1  currently represented by counsel before the Court, and Mota were previously represented

2  by attorney Lynnette Ariathurai in this case, but the Court granted attorney Ariathurai's

3  motion to withdraw as Altamira and Mota's attorney on December 1, 2015.  Dkt. No. 48.

4  Altamira was explicitly warned that if it did not retain counsel, it risked a default

5  judgment.  *Id*. at 1.  The Court dismissed Pedro Mota, Andrade's former supervisor, with

6  prejudice, from this case after he and Andrade reached a settlement on her claims against

7  him.  Dkt. No. 85.  Altamira never appeared before the Court with new counsel.

8       Andrade moved for entry of default against Altamira on December 17, 2015.  Dkt.

9  No. 54.  The Clerk of Court entered default against Altamira on December 29, 2015.  Dkt.

10  No. 58.  Andrade moved for default judgment on August 1, 2016.  Dkt. No. 87.  The Court

11  held a hearing on the motion for default judgment on September 15, 2016.  Hearing

12  Transcript.  Andrade testified as to her employment with Altamira and claims for relief at

13  that hearing.  *Id*.  She then filed a post-hearing brief, her Proposed Findings of Law and

14  Findings of Fact in Support of Default Judgment.  Dkt. No. 102.  Andrade's attorney, Cary

15  Kletter, presented as exhibits: (1) Andrade's paystubs; (2) the Declaration of Pedro Mota

16  supporting some of Andrade's claims; (3) the letter signed by Altamira's employees

17  demanding better treatment from management; (4) Andrade's right-to-sue notices received

18  from the California Department of Fair Employment and Housing; (5) the First Amended

19  Complaint; (6) Sunnyvale Ordinance No. 3078-16 raising the minimum wage to $10.30 on

20  January 1, 2015; (7) the Laffey Matrix detailing attorneys' fees; (8) an Asset Search of

21  Altamira Corporation; (9) a manta.com search of Altamira's assets; (10) a breakdown of

22  hours worked by Andrade's attorneys; and (11) a breakdown of costs incurred by

23  Andrade's attorneys throughout the lawsuit.  Dkt. No. 102-1.

24       Andrade, Arby's, Mota, and Altamira consented to the jurisdiction of a magistrate

25  judge.  Dkt. Nos. 5, 6, 13, 24.

26  **II.   LEGAL STANDARD**

27       Default may be entered against a party who fails to plead or otherwise defend an

28  action and against whom a judgment for affirmative relief is sought.  Fed. R. Civ. P. 55(a).

United States District Court
Northern District of California

1    After entry of default, the Court has discretion to grant default judgment on the merits of

2    the case.  Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In

3    deciding whether to grant default judgment, the Court considers the following factors:

4    (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive

5    claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5)

6    the possibility of a dispute concerning material facts; (6) whether the default was due to

7    excusable neglect; and (7) the strong policy favoring decisions on the merits.  *Eitel v.*

8    *McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The factual allegations of the complaint,

9    except those concerning damages, are deemed admitted by the non-responding parties.

10   *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1010 (N.D. Cal. 2001);

11   *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[t]he general rule

12   of law is that upon default the factual allegations of the complaint, except those relating to

13   the amount of damages, will be taken as true").

14   **III.  DISCUSSION**

15       **A.    Jurisdiction and Service of Process**

16       When presented with a motion for default judgment, the Court has "an affirmative

17   duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*,

18   172 F.3d 707, 712 (9th Cir. 1999).  Also, the Court may only enter default judgment

19   against a minor or incompetent person if represented by a general guardian, conservator, or

20   other like fiduciary who has appeared.  Fed. R. Civ. P. 55(b)(2).

21       Here, Andrade seeks relief under federal and state law, so subject matter jurisdiction

22   is appropriate.  28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Andrade's

23   related state law claims under 28 U.S.C. § 1367.  Defendant Altamira Corporation is

24   neither a minor nor an incompetent person.  Fed. R. Civ. P. 55(b)(2).

25       Altamira participated in this litigation until attorney Ariathurai's motion to

26   withdraw as counsel was granted on December 1, 2015.  Dkt. No. 48.  Prior to the

27   withdrawal, Altamira consented to the jurisdiction of the Court and answered Andrade's

28   complaint, demonstrating that Altamira had notice of Andrade's complaints against it.

United States District Court
Northern District of California

United States District Court
Northern District of California

Dkt. Nos. 18, 24.  Andrade served Altamira with a copy of the motion for default judgment and supporting documents by First Class Mail, and provided proof of service.  Dkt. No. 87-8.  The Court is satisfied that jurisdiction is appropriate, Altamira was on notice of Andrade's claims, and that the service of process was completed.

### B.   Default Judgment

#### 1.   Given Altamira's Failure to Defend Itself, Andrade Would Be Prejudiced If She Were Denied Any and All Relief.

Andrade argues denial of the motion for default judgment would prejudice her because she would be deprived of the opportunity to see her harms redressed, as Altamira has refused to participate in this litigation.  Dkt. No. 87 at 8.  The Court agrees with Andrade, and finds—given Altamira's refusal to participate in this litigation or respond to the Court's warnings—to deny Andrade relief would be fundamentally unfair.

#### 2.   Merits and Sufficiency of the Complaint

Under the second and third *Eitel* factors, in deciding whether to grant default judgment, the Court must examine the merits of Andrade's substantive claims and the sufficiency of the complaint.  *Eitel*, 782 F.2d at 1471-72.  At this stage, the Court takes "the well-pleaded factual allegations" in the complaint as true; however, the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).  "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of No. America*, 980 F.2d 1261, 1267 (9th Cir. 1992).

The motion seeks default judgment on fifteen claims: (1) sexual harassment in violation of FEHA; (2) sexual battery; (3) assault; (4) failure to prevent harassment; (5) failure to pay wages under the FLSA; (6) failure to pay wages in violation of the California Labor Code; (7) liquidated damages under Labor Code § 1194.2 and the FLSA; (8) failure to provide meal breaks; (9) waiting time penalties; (10) penalties under Labor Code §§ 201 and 210; (11) failure to provide accurate wage statements; (12) civil penalties under Labor Code § 558; (13) Unlawful, Unfair and Fraudulent Business Practices in Violation of

Case No. 15-cv-03175 NC                6

1    California Business and Professions Code §§ 17200 and 17203; (14) unlawful retaliation;

2    and (15) wrongful termination in violation of public policy.[2]

3         **a. Claim 1: Andrade Sufficiently Pled Sexual Harassment Under**
4            **FEHA.**

5         "FEHA recognizes two theories of liability for sexual harassment claims… quid pro

6    quo harassment, where a term of employment is conditioned upon submission to

7    unwelcome sexual advances… and hostile work environment, where the harassment is

8    sufficiently pervasive so as to alter the conditions of employment and create an abusive

9    work environment." *Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (2009) (internal citations,

10   quotations marks, and brackets omitted).  The first of these theories is inapplicable here,

11   and the second "is actionable only when the harassing behavior is *pervasive* or *severe*."  *Id.*

12   (citing *Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 462 (2005) (employee claiming "a hostile

13   work environment must demonstrate that the conduct complained of was severe enough or

14   sufficiently pervasive to alter the conditions of employment and create a work environment

15   that qualifies as hostile or abusive to employees because of their sex")).

16        Under FEHA, harassment of an employee on the basis of sex is unlawful where "the

17   entity, or its agents or supervisors, knows or should have known of this conduct and fails

18   to take immediate and appropriate corrective action."  Cal. Gov't Code § 12940(j)(1).

19   Where a supervisor is the harasser, the employer is strictly liable.  *State Dep't of Health*

20   *Servs. v. Superior Court*, 31 Cal. 4th 1026, 1042 (2003); *McKinzy v. Nat'l R.R. Passenger*

21   *Corp.*, 836 F. Supp. 2d 1014, 1024 (N.D. Cal. 2011).

22        Andrade alleged Pedro Mota, her supervisor, directed unwelcome "sexually

23   inappropriate conduct" towards her, which constituted an ongoing pattern of conduct.

24   FAC at 7.  Andrade testified that Mota asked her out on dates verbally and via text about

25   three times every time they worked together.  Hearing Transcript at 20-21.  Andrade

26

27   [2] The Court notes Andrade withdrew claims for violations of Title VII of the Civil Rights
     Act of 1964, non-sexual battery, failure to provide meal breaks, violation of the California
28   Labor Code's Private Attorneys General Act of 2004, negligent training, and violations of
     the Ralph Civil Rights Act.  Dkt. No. 102 at 5.

testified that she would turn him down and tell him she was married with children, and ask him to stop bothering her. *Id.* at 21. However, Mota persisted. *Id.* According to Andrade, this conduct culminated in Mota's grabbing and kissing Andrade against her will. *Id.* at 22-23. Based on these facts, the Court concludes Mota's conduct was both pervasive and severe so as to alter the conditions of Andrade's employment, making such conduct actionable. *Hughes*, 46 Cal. 4th at 1043; *Miller*, 36 Cal. 4th at 462.

Mota declared he supervised Andrade during her employment with Altamira. Dkt. No. 87-5 at 3. These allegations make Altamira, Mota's employer, strictly liable for Andrade's sexual harassment. *State Dep't of Health Servs.*, 31 Cal. 4th at 1042. Andrade testified she complained to a supervisor about Mota's conduct, but nothing was done to investigate or discipline him. Hearing Transcript at 23-24. Based on the allegations, declaration, and testimony, the Court finds Andrade demonstrated the merits and sufficiency of her FEHA sexual harassment claim against Altamira.

### b. Claim 2: Andrade Sufficiently Alleged She Suffered a Sexual Battery and that Altamira Ratified the Battery.

California Civil Code § 1708.5(a) provides that a person commits sexual battery when he or she:

> (1) Acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results.

> (2) Acts with the intent to cause a harmful or offensive contact with another by use of his or her intimate part, and a sexually offensive contact with that person directly or indirectly results.

> (3) Acts to cause an imminent apprehension of the conduct described in paragraph (1) or (2), and a sexually offensive contact with that person directly or indirectly results.

Cal. Civ. Code § 1708.5(a)(1)-(3). "Intimate part" means "the sexual organ, anus, groin, or buttocks of any person, or the breast of a female." § 1708.5(d). Offensive contact is "contact that offends a reasonable sense of personal dignity." § 1708.5(f). To establish a claim for sexual battery, a plaintiff must show she did not consent to the touching; and that she was harmed or offended by the aggressor's conduct. California Civil Jury Instructions

1306.

Here, Andrade provided facts and testimony regarding the incident in which Mota grabbed her from behind, kissed her neck, and pursued her when she tried to escape.  FAC at 5; Hearing Transcript at 22-23, 38-39.  Liability under § 1708.5(a)(3) is established for purposes of default judgment by the facts alleged.  Andrade testified Mota's aggressions during that encounter made her believe "he was going to make [her] do something with him," and that after the incident she "ran outside trembling and afraid. [Andrade] immediately got into her car and drove home crying."  FAC at 5; Hearing Transcript at 23. Mota did not touch her in an "intimate part" under § 1708.5, but he did cause her to be in "imminent apprehension" he would.  § 1708.5(a)(3).  Further, forcibly grabbing Andrade's stomach and kissing her neck constitutes sexually offensive contact that "offends a reasonable sense of personal dignity."  § 1708.5(f).  Andrade makes clear she did not consent to Mota's advances, and that she was harmed by his conduct.  Andrade alleges Mota's conduct caused her sadness, fear that such an episode would recur, and insomnia, among other things.  Hearing Transcript at 40-41.  The Court next considers if Altamira "ratified" Mota's actions such that Altamira would be liable for sexual battery.

Corporate employer ratification "may be established by any circumstantial or direct evidence demonstrating adoption or approval of the employee's actions by the corporate agent, which may be inferred from a failure by the employer to investigate an employee's acts once the employer has become aware of them." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 815 (N.D. Cal. 2015) (citing *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 622 (1989) (holding that despite sufficiently pled sexual harassment by a physician, plaintiff must also sufficiently plead employer ratified acts to plead prayer for punitive damages against employer)).  "If the employer, after knowledge of or opportunity to learn of the agent's misconduct, continues the wrongdoer in service, the employer may become an abettor and may make himself liable in punitive damages." *Murillo v. Rite Stuff Foods, Inc.*, 65 Cal. App. 4th 833, 852 (1998) (quoting *McChristian v. Popkin*, 75 Cal. App. 2d 249, 256 (1946)).  In *Murillo*, the appellate court reversed a grant of

1  summary judgment where plaintiff, the victim of sexual harassment by her immediate

2  supervisor, complained to her manager twice about the conduct, but the situation was

3  neither investigated nor remediated.  *Id.* at 839, 852; *see also Shoopman v. Pac.*

4  *Greyhound Lines*, 169 Cal. App. 2d 848, 856 (1959) (Greyhound aware of agent's conduct

5  toward plaintiff, but retained agent without any indication of discipline or redress to

6  plaintiff).  Ratification is generally a factual question.  *Ventura v. ABM Indus. Inc*., 212

7  Cal. App. 4th 258, 272 (2012).

8      For purposes of this motion, the Court finds Altamira "ratified" Mota's conduct.

9  Andrade sufficiently alleges she not only suffered a sexual battery, but also complained of

10  Mota's conduct to supervisor and shift leader Riefkohl. Dkt. No. 102 at 8 (citing Hearing

11  Transcript at 23-24).  As noted above, ratification is a factual question.  *Ventura*, 212 Cal.

12  App. 4th at 272.  Though Andrade did not complain to another person at Altamira, her

13  complaint and testimony suffice to find that Altamira knew of or had the opportunity to

14  learn of Mota's conduct.  *Murillo*, 65 Cal. App. 4th at 852.  Thus, the Court find Altamira

15  ratified Mota's sexual battery against Andrade.

16          **c.  Claim 3: Andrade Sufficiently Alleged She Suffered An Assault, and**
           **that Altamira Ratified Mota's Conduct.**
17

18      To establish a claim for assault, a plaintiff must show that "(1) the defendant

19  threatened to touch the plaintiff in a harmful or offensive manner; (2) it reasonably

20  appeared to the plaintiff that the defendant was about to carry out the threat; (3) the

21  plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5)

22  the defendant's conduct was a substantial factor in causing the plaintiff's harm."  *Avina v.*

23  *United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) (citations omitted).

24      Here, Andrade sufficiently alleges Mota committed an assault against her when he

25  perpetrated the alleged sexual battery.  Andrade alleged she was afraid of Mota because it

26  appeared to her that Mota would "abuse" her, and based on Andrade's testimony she did

27  not consent to Mota's conduct.  Hearing Transcript at 24.  Andrade was harmed by Mota's

28  conduct, and Mota was a substantial factor in her harm.  Andrade alleges Altamira ratified

Mota's acts against her, and Mota's acts were committed "during the course and scope of employment." FAC at 10. The Court found Altamira ratified Mota's sexual battery against Andrade because, after Andrade's communication with Riefkohl, Altamira either knew or has the opportunity to know of Mota's misconduct against its employees. *Murillo*, 65 Cal. App. 4th at 852. The same reasoning applies here for finding Altamira ratified Mota's assault on Andrade: Riefkohl's knowledge of the assault and battery create liability for Altamira.

### d. Claim 4: Andrade Has Not Sufficiently Pled Failure to Prevent Harassment.

California Government Code § 12940(k) makes unlawful an employer's failure "to take all reasonable steps necessary to prevent discrimination and harassment from occurring." To state a claim for failure to prevent harassment, a plaintiff must show: (1) "plaintiff was subjected to discrimination, harassment or retaliation;" (2) "defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation;" and (3) "this failure caused plaintiff to suffer injury, damage, loss or harm." *Leland v. City & Cty. of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008). "The causation element of a section 12940(k) claim requires an employee show that the discriminatory conduct was a 'substantial factor' in causing his harm." *Achal*, 114 F. Supp. 3d at 804. Further, this section applies to "'an employer who knew or should have known of discrimination or harassment' and 'fail[s] to take prompt remedial action.'" *Alejandro v. ST Micro Elecs., Inc*, 129 F. Supp. 3d 898, 913 (N.D. Cal. 2015) (quoting *Vierria v. Cal. Highway Patrol*, 644 F. Supp. 2d 1219, 1245 (E.D. Cal. 2009)).

By alleging she was sexually harassed by Mota, her supervisor, Andrade pleads the first element of *Leland*. 576 F. Supp. 2d at 1103 ; FAC at 11. Andrade also alleges that at no time during her employment did she witness any managers participate in sexual harassment prevention training or learn that such training was offered. Hearing Transcript at 26. This lack of training, Andrade contends, was a proximate cause for the injuries she suffered from Mota's conduct. FAC at 12. However, Andrade provides no facts that

United States District Court
Northern District of California

persuade the Court that had Mota been required to participate in sexual harassment prevention training, Andrade's harassment would not have occurred.  Thus, Andrade has not met the causation element of § 12940(k) claim; namely, that Andrade failed to show that Altamira's failure to train was "substantial factor" in causing the harassment.  *Achal*, 114 F. Supp. 3d at 804.  Andrade did not sufficiently plead failure to prevent harassment.

### e. Claim 5: Andrade Sufficiently Pled Altamira Failed to Pay Wages Under the FLSA, 29 U.S.C. § 207.

29 U.S.C. § 207(a)(1) provides that an employer shall not employ any employee working more than 40 hours per week unless the employee receives one and one-half times their regular rate of pay for the excess hours worked over 40 hours.  Andrade alleges she worked overtime while employed by Altamira.  FAC at 12; Dkt. No. 87-5 (Mota was aware of at least one occasion in which Andrade worked more than 10 hours in one day).  Further, based on paystubs provided, Altamira did violate 29 U.S.C. § 207 by not paying her for all overtime worked.  Dkt. No. 87-1.

### f. Claim 6: Andrade Sufficiently Pled Altamira Failed to Pay Her Wages in Violation of Cal. Labor Code §§ 510, 1194.

Employees receiving less than the legal minimum wage or overtime compensation are "entitled to recover … the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."  Cal. Lab. Code § 1194.  Similarly, § 510(a) states: "work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek" must be compensated at a rate of at least one and one-half times the employee's regular rate of pay.

Here, Andrade demonstrated she was not paid minimum wage between January 1 - 15, 2015.  During that pay period, she was paid $10.00 per hour where the minimum wage had been raised to $10.30 on January 1.  Dkt. No. 102-1 at 24, 78 (copy of Ordinance No. 3078-16).  Thus, Andrade sufficiently pled a violation of § 1194.  Though Andrade does not have the same level of proof for her claims for overtime, she pled in the First Amended Complaint that she "typically worked more than 8 hours per day and 40 hours per week

1  during the statutory period without being properly compensated for all hours," and that she

2  "was not paid wages for all hours she worked."  In addition, at the hearing on this motion,

3  Andrade testified she worked more than 40 hours per week "almost every two-week

4  period," and that she believed Manager Kaur, who reviewed hours worked, knew she

5  worked overtime.  Hearing Transcript at 13.  Lastly, Andrade testified that Kaur "always"

6  instructed her to perform labor after she had clocked out.  *Id*. at 16.  Accordingly, Andrade

7  pled sufficient facts to conclude for purposes of this motion that she was both paid less

8  than minimum wage for the stated period and that she worked, but was not paid overtime.

9

10  ### g.  Claim 7: Andrade Is Owed Limited Liquidated Damages Under Cal. Labor Code § 1194.2 and the FLSA.

11  California Labor Code § 1194.2 entitles employees bringing an action under § 1194

12  "to recover liquidated damages in an amount equal to the wages unlawfully unpaid and

13  interest thereon."  Though § 1194.2 states liquidated damages may not be recovered for

14  failure to pay overtime, in *Sillah v. Command Int'l Sec. Servs*., 154 F. Supp. 3d 891 (N.D.

15  Cal. 2015), the court found plaintiffs suing for failure to pay overtime could recover

16  liquidated damages under § 1194.2 *if* they also showed they were paid less than minimum

17  wage.  Citing *Cruz v. Quang*, No. 13-cv-00181 VC, 2015 WL 348869, at *6 (N.D. Cal.

18  Jan. 23, 2015).  Under federal law, an employer violating 29 U.S.C. § 207 is liable to the

19  affected employee not only for the unpaid minimum wages or overtime, but also "in an

20  additional equal amount" in liquidated damages.  29 U.S.C. § 216(b).

21  Andrade was not paid for all hours worked under § 1194, and for at least one pay

22  period, she was not paid minimum wage.  However, given that Andrade was only paid less

23  than minimum wage for one pay period, the Court finds it would result in a windfall to her

24  to impose liquidated damages under § 1194.2 using *Sillah*'s rationale.  However, 29 U.S.C.

25  § 207(b) does not limit liquidated damages for unpaid overtime, and so liquidated damages

26  may be paid for overtime worked, whether or not Andrade was paid minimum wage.

27  ///

28  ///

United States District Court
Northern District of California

### h. Claim 8: Andrade Sufficiently Pled that Altamira Failed to Provide Meal Breaks in Violation of Cal. Labor Code §§ 226.7, 512 and Industrial Welfare Commission Wage Orders.

Employers may not require employees to work during meal periods pursuant to an IWC wage order. Cal. Lab. Code § 226.7(b). IWC Wage Order 5-2001(11)(A) prohibits employers from having employees work longer than five hours without a meal period of at least 30 minutes, except when the total hours worked does not exceed six hours total for the workday. Employees must be "relieved of all duty" during the meal, otherwise employees will be considered to be "on duty" during the meal. *Id*. Also, § 226.7(c) provides that where meal periods are not provided, the employer must pay the employee "one additional hour of pay" at the employee's regular rate of pay for each workday the meal was not provided.

Andrade testified she never received an uninterrupted meal break because she supervised newly-hired personnel and "was in charge of the money." Hearing Transcript at 13-14. Indeed, Andrade testified that Manager Kaur told her she could not leave the building during meal breaks. *Id*. at 14. Also, Andrade provided the Court proof she was not paid an additional hour of pay when uninterrupted meal breaks were owed, but not provided. Thus, Andrade sufficiently alleged and provided evidence that she did not receive the uninterrupted meal breaks she was owed. FAC at 15.

### i. Claim 9: Andrade Sufficiently Pled that She is Eligible for Waiting Time Penalties Under Cal. Labor Code §§ 201, 203.

California Labor Code § 201(a) requires employers who discharge employees to pay the employee the wages "due and payable immediately." Where violations of § 201 exist, § 203 provides that the employee's wages continue as a penalty at the normal rate of pay from the due date to the date paid, not to exceed 30 days. § 203(a).

Here, because Andrade sufficiently alleged she was not paid for meal breaks, the minimum wage, and overtime during her employment, and because she was not paid for additional hours at the time she was terminated, she is owed waiting time penalties under § 203(a). FAC at 16; Hearing Transcript at 32 (Andrade denying she was paid all wages

owed to her, "including wage or off-the-clock missed meal break wages, and unpaid minimum wages, and unpaid overtime" in her final check immediately after termination).

### j. Claim 10: Andrade Is Not Entitled to Civil Penalties Under Cal. Labor Code § 210.

California Labor Code § 204(a) requires employers to pay employees on a bimonthly basis on a designated payday.  Labor Code § 210(a) provides the following civil penalties for failure to comply with § 204: $100 for each initial violation for each failure to pay each employee and $200 for each subsequent violation, including an additional 25% of the amount withheld.  These civil penalties are recovered by the California Labor Commissioner on behalf of the people of the State of California "as part of a hearing held to recover unpaid wages and penalties."  § 210(b).  There exists no private right of action for violations of § 210, *see Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011), and Andrade has provided no figures as to the amount withheld.  Therefore, though Andrade pled underpayment, the Court cannot provide relief under § 210.  FAC at 16-17.

### k. Claim 11: Andrade Sufficiently Pled Altamira Failed to Provide Her With Accurate Wage Statements, Violating Cal. Labor Code § 226(a).

California Labor Code § 226(a) requires employers to provide employees with accurate itemized statements in writing showing, among other things, their gross and net wages earned, total hours worked, all deductions, the dates included in the pay period, and the identifying information of the employee and employer, and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."  These statements must be provided on a semimonthly basis or at the time of each wage payment.  *Id*.  Section 226(e) allows employees "suffering injury as a result of a knowing and intentional failure by an employer" to abide by §226(a) to recover the greater of all actual damages, or $50 for an initial violation and $100 per employee for each violation in a subsequent pay period, not to exceed $4,000 total.

Here, Andrade pled her paystubs were inaccurate because she was required by Kaur

to work after clocking out of her shift and did not receive uninterrupted meal breaks. Hearing Transcript at 12-16. Andrade also testified Manager Kaur knew she was working more than 40 hours almost every week because "she was in charge of reviewing the hours that every employee worked." *Id.* at 13. This claim is sufficient to show for purposes of this motion that Altamira knowingly and intentionally provided Andrade with inaccurate wage statements to her detriment. Cal. Lab. Code § 226(e). Thus, the Court finds Altamira failed to provide Andrade with accurate wage statements, violating § 226(a).

### l. Claim 12: Andrade is Eligible for Civil Penalties Under Cal. Labor Code § 558.

California Labor Code § 558 provides civil penalties against employers payable to the affected employee for labor code or IWC wage order violations in the amount of $50 for initial violations to underpaid employees "for each pay period for which the employee was underpaid" in addition to the amount of unpaid wages. Second, for each subsequent violation, a penalty of $100 for each underpaid employee will be levied per underpaid pay period, in addition to unpaid wages. *Id.*

Here, Andrade has pled violations of IWC Wage Orders and Labor Code §§ 201, 203, 204, 226.7, 510, 512 and 1194. FAC at 18. Accordingly, Andrade is eligible for civil penalties under Cal. Labor Code § 558.

### m. Claim 13: Though Andrade Sufficiently Pled Altamira was Engaged in Unlawful Business Practices in Violation of Cal. Business and Professions Code §§ 17200, 17203, She Has Not Shown She Would Be Entitled to Relief for Such Violations.

Unfair competition is "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Here, Andrade is only pursuing damages for "unlawful" business practices. Dkt. No. 101 at 45. An unlawful business practice under § 17200 encompasses "anything that can properly be called a business practice and that at the same time is forbidden." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted). Section 17200 "borrows violations of other laws and treats them as unlawful practices," and makes those legal violations

1  "independently actionable."  Section 17203 allows for restitution to victims of unfair

2  business practices and injunctions to prevent the complained-of conduct.  However, to

3  obtain injunctive relief under § 17203, a showing of threatened future harm or continuing

4  violation is required;" no past events may be enjoined.  *People v. Toomey*, 157 Cal. App.

5  3d 1, 20 (1984).

6      Here, Andrade argues the § 17200 claim is supported by Altamira's alleged

7  violations of the FLSA and assorted Labor Code sections.  FAC at 20-21.  She requests

8  restitution and an injunction against Altamira under § 17203, preventing it from continuing

9  to engage in and profit from unlawful conduct.  *Id.* at 22.  Regarding restitution, it is less

10 than clear from Andrade's representations what restitution she would be entitled to apart

11 from her recovery under the above-discussed sections of the FLSA and California Labor

12 Code.  As to the injunction, Andrade has not alleged sufficient facts to satisfy the Court

13 that there is a "threatened future harm or continuing violation" of the FLSA and Labor

14 Code sections.  This is not to say that such events are not transpiring, just that Andrade has

15 failed to provide the Court with any allegations or evidence that Altamira's alleged

16 malfeasance continues.

17          **n.  Claim 14: Andrade Sufficiently Pled Unlawful Retaliation.**

18      Under FEHA, it is unlawful for an employer "to discharge, expel, or otherwise

19 discriminate against any person because the person has opposed any practices forbidden

20 under this part or because the person has filed a complaint, testified, or assisted in any

21 proceeding under this part."  Cal. Gov't Code § 12940(h).  To state a claim for unlawful

22 retaliation, a plaintiff must establish: "(1) she was engaged in protected activity; (2)

23 defendant took an adverse employment action; and (3) a causal connection existed between

24 plaintiff's protected activity and defendant's adverse employment action."  *Leland v. City

25 & Cty. of San Francisco*, 576 F. Supp. 2d 1079, 1094 (N.D. Cal. 2008).  To establish

26 unlawful retaliation, the plaintiff must "establish that unlawful retaliation was a substantial

27 factor motivating the adverse employment action."  *Yau v. Saint Francis Mem'l Hosp.*, No.

28 13-cv-02558 DMR, 2015 WL 3639521, at *11 (N.D. Cal. June 11, 2015) (citing *Harris v.*

United States District Court
Northern District of California

1    *City of Santa Monica*, 56 Cal. 4th 203, 225 (2013)) (internal quotation marks omitted).

2        Andrade contends Altamira retaliated against her "for having opposed, resisted and

3    complained of the acts alleged herein.  This retaliation is part of a pattern and practice of

4    retaliation against employees who complain of unlawful acts by" Altamira.  FAC at 22.

5    Andrade argues her abrupt termination was caused by her signing a document demanding

6    better treatment for employees and her telling Kaur she had seen her hit employees.  *See*

7    *id*.  Andrade testified that after she confronted Kaur about her conduct and confirmed to

8    Kaur she signed the document, she heard through co-workers that Kaur would fire her

9    because of the confrontation.  Hearing Transcript at 32.

10       These well-pled allegations suffice to establish a claim for unlawful retaliation.  In

11   signing a workers' rights letter and confronting her manager about conduct she personally

12   witnessed, Andrade engaged in a protected activity.  *Lelaind*, 576 F. Supp. 2d at 1094.

13   Second, Andrade's termination was an adverse employment action.  *Id*.  Lastly, there is

14   circumstantial evidence, based on the rumors Andrade heard and the timing of her

15   dismissal, which suggest, for purposes of this motion, that there was a strong causal

16   connection between her protests and termination.  *Id; Yau*, 2015 WL 3639521, at *11.

17
              **o. Claim 15: Andrade Sufficiently Pled She was Wrongfully**
18                    **Terminated in Violation of Public Policy.**

19       An employee may sue in tort when the employer's termination of the employee

20   "violates fundamental principles of public policy."  *Tameny v. Atl. Richfield Co*., 27 Cal.

21   3d 167, 170 (1980).  "The public policy must be (1) delineated in either constitutional or

22   statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public'

23   rather than serving merely the interests of the individual; (3) well established at the time of

24   discharge; and (4) substantial and fundamental."  *Freund v. Nycomed Amersham*, 347 F.3d

25   752, 758 (9th Cir. 2003) (quoting *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143,

26   1159 (1998) (internal quotation marks omitted)).  The finder of fact should also determine

27   whether discrimination "was a substantial motivating factor/reason" for the termination.

28   *Harris*, 56 Cal. 4th at 232 (internal quotation marks omitted) (finding trial court erred in

     Case No. 15-cv-03175 NC               18

United States District Court
Northern District of California

1    instructing jury in a mixed-motive termination case).

2         Andrade alleges her termination was in retaliation of her "complaints of an abusive

3    work environment," unionization efforts, managerial physical abuse, sexual harassment

4    and/or the failure to investigate complaints of sexual harassment" motivated her

5    termination.  Dkt. No. 102 at 20; *but see* FAC at 23 (In the FAC, Andrade alleges her

6    termination "was in retaliation for her complaints of unlawful harassment" and as a result

7    of Altamira's "failure to prevent further unlawful harassment").  Per Andrade, Altamira's

8    alleged "conduct violates the Public Policy of the State of California as put forward in

9    [FEHA], the California Constitution, the California Labor Code, and other statutes and

10   provisions.  FAC at 23.  Andrade does not specify which provisions of FEHA, the

11   California Constitution, or the Labor Code Altamira violated.  However, based on

12   Andrade's previous allegations, it is clear that one public policy violated was that against

13   wrongful termination under FEHA, where Andrade has sufficiently pled her termination

14   was retaliatory.  *Trop v. Sony Pictures Entm't Inc*., 129 Cal. App. 4th 1133, 1144 (2005)

15   ("FEHA provisions may provide the policy basis for a claim for wrongful termination in

16   violation of public policy").  This policy is for the benefit of the public, and it is well-

17   established, and is both substantial and fundamental.  *Freund*, 347 F.3d at 758.

18   Accordingly, the Court finds Andrade sufficiently alleged she was terminated in violation

19   of public policy.

20        **3.  Remaining *Eitel* Factors**

21        After considering the sufficiency and merits of the complaint, the Court must also

22   consider the sum of money at stake in the action, the possibility of a dispute concerning

23   material facts, whether the default was due to excusable neglect, and the strong policy

24   favoring decisions on the merits.  *Eitel*, 782 F.2d at 1471-72.

25        Andrade requests $275,804.92 as well as an award of prejudgment interest.  Dkt.

26   No. 87 at 10.  This is a strong sum of money, but based on the number of claims,

27   Andrade's dropping of claims, that number is a ceiling the Court will not reach.

28        As for the possibility of there being a dispute regarding material facts, the Court

United States District Court
Northern District of California

1 | notes Altamira could dispute the facts as Andrade presents them.  However, Altamira was
2 | given ample opportunity to respond to this motion.  Altamira has not appeared to defend
3 | itself from this motion.  Because of the need for finality in this case, and Altamira's refusal
4 | to participate in the judicial process since attorney Ariathurai's withdrawal as counsel, the
5 | danger of a future dispute as to material facts is outweighed by the need to enter judgment.

6 |       For the same reason, the Court finds that Altamira's failure to appear repeatedly
7 | regarding this motion was not excusable neglect.

8 |       Lastly, although federal policy generally favors decision on the merits, Federal Rule
9 | of Civil Procedure 55(b) allows entry of default judgment in situations where the
10 | defendant refuses to participate in the litigation.

## C.    Damages

12 |       While the Court accepts the well-pled allegations in the complaint as true at the
13 | default judgment stage, the Court has discretion to award damages as appropriate. *Geddes*,
14 | 559 F.2d at 560. Andrade originally requested $275,804.92 in damages against Altamira.
15 | Dkt. No. 87 at 8. The Court finds appropriates damages of $47,962.63.  In addition, the
16 | Court awards Kletter + Nguyen Law LLP $47,685.00 in attorneys' fees and $2,722.47 in
17 | costs.

### 1.    Statutory Damages

19 |       Andrade requests statutory damages in the following amounts for FLSA and
20 | California Labor Code-related damages:

- $6,609.20 for violations of Labor Code § 226.7(b) for failure to provide meal breaks;
- $24.63 for unpaid minimum wages;
- $364.07 for violations of the FLSA, Labor Code, and IWC wage orders for unpaid minimum wages;
- $388.70 in liquidated damages under the FLSA and Labor Code § 1194.2;
- $2,750.00 for violations of Labor Code § 226(e) for failure to provide accurate wage statements;

United States District Court
Northern District of California

- $2,600.00 under Labor Code § 203 for waiting time penalties;
- $15,400.00 in lost wages – "back pay (i.e. $11.00 per hour for 40 hours per week since her termination and unlawful retaliation)"; and
- $8,240.00 in lost wages for front pay.

Dkt. Nos. 87 at 9-10, 87-1.

### a. Failure to Provide Meal Breaks

Andrade sufficiently pled she was never allowed to take uninterrupted meal breaks while an Altamira employee.  In a declaration by attorney Cary Kletter, he declares the amount requested is based upon two additional hours of pay for each missed meal break and each missed rest break between February 19, 2014 to April 17, 2015.  The declaration bases this amount on a six-day work week.  Dkt. No. 87-1 at 3.

Andrade dropped her part of her ninth claim for failure to provide *rest* breaks, but kept the claim for a failure to provide *meal* breaks.  Dkt. No. 102 at 5-6.  The Court must adjust the amount requested.  Between February 19 and February 28, 2014, Andrade was paid $8.50 an hour. For that period, she requested $102.00 for missed meal and break periods.  Because Andrade dropped her claim for missed breaks, the Court splits the request for this period in half, which awards Andrade $51.00, for six days of missed meal breaks.  The Court does the same with damages for the period of March 1 and June 15, 2014, while Andrade's rate of pay was $9.00 per hour, and awards her $756.00 for missed meal breaks during that time.  Between June 16 and December 31, 2014, Andrade was paid $10.00 an hour. On the same basis, the Court finds half of Andrade's request appropriate: $1,560.00. Between January 1 and 15, 2015, Andrade was paid $10.30 an hour. The Court likewise awards her half: $123.60.  Lastly, between January 16 and April 17, 2015, Andrade's rate of pay was $11.00 an hour. The Court awards Andrade $ 814.00.  In total, the Court awards Andrade half of her request for violations of Cal. Labor Code § 226.7(b): $3,304.60 ($51.00 + $756.00 + $1,560.00 + $123.60 + $814.00).

### b. Unpaid Minimum Wages

Between January 1 to 15, 2015, Andrade was paid under minimum wage.

United States District Court
Northern District of California

1    According to her paystub, during that pay period she worked 82.1 hours, and was

2    underpaid by 30 cents per hour, where the minimum wage was $10.30 per hour, but she

3    was paid $10.00.  Dkt. No. 102-1 at 24.  The Court finds Andrade entitled to $24.63 (82.1

4    x $0.30) in unpaid minimum wages.

5                    **c.  Violations of the FLSA, Cal. Labor Code, and IWC Wage Orders**

6          Andrade alleges she is owed $364.07 for violations of the FLSA, Labor Code, and

7    IWC wage orders for unpaid minimum overtime wages.  Dkt. No. 87-1 at 3-4.  Based on

8    the Court's calculations taking into account the paystub records, the Court finds Andrade

9    entitled to $359.07 in unpaid overtime wages, which takes into account all hours above 80

10   worked in a pay period and calculates the extra amount of overtime due to Andrade.  *See*

11   Appendix 1 (providing the Court's calculations).

12                   **d.  Liquidated Damages Under the FLSA and Cal. Labor Code § 1194.2**

13         Andrade alleges her damages under the FLSA and Labor Code § 1194.2 are the sum

14   of the unpaid minimum wages and unpaid overtime wages due.  Dkt. No. 87-1 at 5.

15   However, based on the discussion above regarding liquidated damages, under the

16   California Labor Code, she is only entitled to liquidated damages for the period she was

17   paid less than minimum wage.  Therefore, she is entitled to $24.63 in liquidated damages

18   under Labor Code § 1194.2.  However, under the FLSA, 29 U.S.C. § 216(b), liquidated

19   damages are due for unpaid minimum wages *and* overtime.  Using the Court's

20   calculations, under the FLSA, that amount is $383.70 ($24.63 + 359.07).  The Court notes

21   that Labor Code § 1194.2(a) contemplates awarding interest on the liquidated damages,

22   $24.63.  However, Andrade has provided no calculations for the Court to determine the

23   interest due.  The Court declines to speculate on an amount.  Accordingly, under the FLSA

24   and Labor Code, Andrade is owed $408.33 total in liquidated damages

25                   **e.   Violations of Cal. Labor Code § 226(e) for Failure to Provide
                           Accurate Wage Statements**

26

27         Andrade alleges $2,750.00 in damages for its failure to provide accurate wage

28   statements.  Dkt. No. 87-1 at 5.  Considering Andrade pled she was underpaid the entire

United States District Court
Northern District of California

1    time she worked with Altamira, due, among other things, to not being paid overtime and

2    for missed meal breaks, the amount Andrade requests is correct.  For a first violation of §

3    226(e)(1), the employer is fined $50, and for each subsequent violation $100, capping at

4    $4,000.  Andrade has 29 paystubs from Altamira, meaning she worked for Altamira for 29

5    pay periods.[3]  Dkt. No. 87-2.  For the initial violation, Altamira is fined $50, and for each

6    of the 28 subsequent pay periods $100, equaling a $2,850.00 fine.

7                    **f.   Violations of Cal. Labor Code § 203 for Waiting Time Penalties**

8           Penalties accrue for purposes of Cal. Labor Code § 203 "not only on the days that

9    the employee might have worked, but also on nonworkdays."  *Mamika v. Barca*, 68 Cal.

10   App. 4th 487, 492 (1998), *as modified* (Dec. 11, 1998).  This means that under § 203,

11   damages accrue for 30 calendar days straight.  *Id.*, Cal. Lab. Code § 203.

12          The challenge in calculating this amount here is twofold.  First, Andrade showed for

13   purposes of this motion that she always worked more hours than her paystubs reflect,

14   making a true average amount difficult to calculate given the amount of overtime worked;

15   and second, Andrade was given a raise three times in the space of one year.  Dkt. No. 87-2.

16   As a result, dividing the amount she made in the year before she was terminated by 52

17   weeks, to then determine the properly hourly rate, as in *Mamika*, would not properly

18   compensate Andrade for what she would have lost in the 30 days after she was terminated.

19   *See id*.[4]  At the time she was terminated, Andrade made $11 an hour.  Dkt. No. 87-2 at 11.

20   Based on her paystubs alone, and using the *Mamika* framework, Andrade would only be

21

22   _____

23   [3] Though Andrade's last paystub states that the relevant pay period is March 1-15, 2015,
     the pay date on the paystub is April 17, 2015, the day Andrade was terminated.  Because

24   Andrade presented the Court with her paystub for March 1-15, 2015, *see* dkt. no. 87-2 at
     10, which reflects different hours worked, the Court considers that the paystub dated April

25   17, 2015, was meant to compensate Andrade for the pay period of April 1-15, 2015.  *See
     id*. at 11 (where the later paystub provides information regarding keeping that paystub for

26   Andrade's future employment, and referring to Altamira as Andrade's former employer).
     [4] In *Mamika*, the Court agreed with the plaintiff's calculation, where "[the plaintiff]

27   calculated this amount by dividing his annual salary of $60,000 by 52 weeks ($1,153.85),
     then dividing by 40 hours to obtain an hourly rate of $28.84, and multiplying by 8, the

28   number of hours plaintiff testified he worked each day. Rounded, this amount is $230.77
     per day. Multiplied by 30 days, the penalty amount totals $6,923.10." 68 Cal. 4th at
     490.

1    entitled to $9.25 an hour. *See* Appendix 1. In addition, based on her paystubs, Andrade

2    worked an average of 36.69 hours a week, where she has testified she always worked

3    through meal breaks and off the clock. *See id.* Accordingly, the Court finds that

4    Andrade's wage should be calculated at $11 and she should be credited as working full-

5    time (40 hours per week), for purposes of the waiting time penalty. The amount Andrade

6    is due is therefore: $2,640.00 ($11 x 8 hours per day x 30 days).

### g. Backpay and Frontpay

8         Andrade argues she is owed back pay and front pay as a result of her wrongful

9    termination. Dkt. No. 102 at 20.

10         In a civil case alleging violations of FEHA, a court "may grant … any relief a court

11   is empowered to grant in a civil action… in addition to any other relief that, in the

12   judgment of the court, will effectuate the purpose of this part." Cal. Gov't Code § 12965.

13   Among those remedies are backpay. Judicial Council Of California Civil Jury Instruction

14   2512; *see Harris*, 56 Cal. 4th 232-33 (where employer had discriminatory and non-

15   discriminatory reasons for terminating an employee, backpay is not appropriate if the

16   employer would have made the same decision absent a discriminatory motive). "[T]he

17   measure of recovery by a wrongfully discharged employee is the amount of salary agreed

18   upon for the period of service, less the amount which the employer affirmatively proves

19   the employee has earned or with reasonable effort might have earned from other

20   employment." *Mize-Kurzman v. Marin Cmty. Coll. Dist.*, 202 Cal. App. 4th 832, 871

21   (2012). "[T]he general rule is, that when a wrong has been done, and the law gives a

22   remedy, the compensation shall be equal to the injury. . . . The injured party is to be

23   placed, as near as may be, in the situation he would have occupied if the wrong had not

24   been committed." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418-19 (1975).

25         "Front pay" is "a measure of damages for loss of future income, as opposed to

26   backpay, which is lost-wages damages through the time of trial." *Horsford v. Bd. Of*

27   *Trustees Of California State Univ.*, 132 Cal. App. 4th 359, 388 (2005) (noting in a case

28   alleging violations of FEHA, that though front pay "usually reflects a temporary situation

1    that will be remedied by other relief ordered in the judgment," '[o]ccasionally, courts have

2    awarded front pay based upon a wage differential that will persist over the employee's

3    working life").

4    Andrade claims $15,400.00 in lost wages, so called "backpay." Based on an $11

5    per hour wage, Andrade would make $440.00 a week. Andrade requests backpay for 35

6    weeks ($15,400/440). The Court finds this time period excessive, given that Andrade

7    testified she was out of work for six months, or approximately 26 weeks, after Altamira

8    terminated her. Dkt. No. 101 at 51. For those six months of unemployment, the Court

9    finds backpay in the amount of $11,440.00 ($440 per week x 26 weeks).

10   The Court notes, however, that Andrade's next job at Felipe's Market was not full-

11   time, that she worked 32 hours a week, and that she worked at Felipe's for about five

12   months, or about 22 weeks. *Id*. at 51-52. Andrade failed to specify a number of weeks.

13   Andrade testified that in June 2016, she began working at Safeway, where she is paid more

14   per hour for less hours of work. *Id*. at 53-54. Due to Andrade's underemployment at

15   Felipe's Market, the Court awards additional backpay. The Court found Andrade worked

16   full-time at Altamira, or 40 hours, and so while an employee at Felipe's Market, she was

17   underemployed by 8 hours a week.  Accordingly, the Court finds Andrade owed an

18   additional $1,936 (($11 per hour) x (8 hour per week) x (22 weeks)) in back pay.

19   The Court finds it improper to continue to compensate Andrade for her time at

20   Safeway, where she is making more money than at Altamira. Plus, Andrade indicated no

21   desire to be reinstated at Altamira. Awarding frontpay, especially where the Court has

22   taken into account the difference in hours while she worked at Felipe's Market, would

23   result in a windfall to Andrade. Such an outcome is not appropriate. *C.f., Davis v. Los

24   Angeles Unified Sch. Dist. Pers. Comm'n*, 152 Cal. App. 4th 1122, 1133 (2007) (in

25   discussing backpay, "courts must take care not to grant the employee a windfall"). Thus,

26   the Court awards Andrade $13,376.00 in backpay.

27             **h. Interest**

28   An employee "receiving less than the legal minimum wage or the legal overtime

Case No. 15-cv-03175 NC              25

*United States District Court*
*Northern District of California*

compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon."  Cal. Lab. Code § 1194.  As to prejudgment interest, the Labor Code provides that in action for nonpayment of wages, a court must "award interest on all due and unpaid wages" at a rate of 10% per year.  § 218.6, Cal. Civ. Code § 3289(b).  A meal break claim does not fall under this category, nor do waiting time penalties.  *In re: Autozone, Inc*., No. 10-md-02159 CRB, 2016 WL 4208200, at *7 (N.D. Cal. Aug. 10, 2016), *reconsideration denied sub nom. In re: AutoZone, Inc., No*. 10-md-02159 CRB, 2016 WL 6834138 (N.D. Cal. Nov. 21, 2016) (citing Cal. Lab. Code § 218.6, *Kirby v. Immoos Fire Prot., Inc*., 53 Cal. 4th 1244, 1255 (2012), and *Drumm v. Morningstar, Inc*., 695 F. Supp. 2d 1014, 1022 (N.D. Cal. 2010).  "The purpose of prejudgment interest is . . . to make the plaintiff whole as of the date of the injury," not to punish or disincentivize an employer from wrongdoing.  *Drumm*, 695 F. Supp. 2d at 1022.  Thus, prejudgment interest is only due on the unpaid minimum wages and overtime, totaling $383.70.  However, as was the issue with Andrade's requested liquidated damages, the Court received no documentation suggesting how it might calculate the interest due to Andrade for these unpaid wages.  The Court declines to take on Andrade's burden.

### 2.  Damages for Emotional Distress

Andrade requests $50,000.00 in damages for emotional distress.  Dkt. No. 87 at 10.

Emotional distress damages may be granted when an employee is subjected to harassment under FEHA.  *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 234 (2013) (limiting holding to where a termination is not merely "substantially motivated by discrimination," otherwise, damages may not be awarded); *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 410 (1994), *as modified* (Mar. 4, 1994) (upholding emotional distress damage award resulting from sexual harassment).  "'[T]here is no fixed or absolute standard by which to compute the monetary value of emotional distress,' and a 'jury is entrusted with vast discretion in determining the amount of damages to be awarded.'" *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1602 (2012) (quoting *Hope v. California*

*Youth Auth.*, 134 Cal. App. 4th 577, 595 (2005)). "Compensable emotional distress runs the full gamut of intangible mental suffering, including ... fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal." *Murillo v. Rite Stuff Foods, Inc.*, 65 Cal. App. 4th 833, 848 (1998) (internal citations and quotation marks omitted) (superseded by statute on other grounds in *Salas v. Sierra Chem. Co.*, 59 Cal. 4th 407 (2014)).

Here, Andrade contends her termination was in response to her participating in unionization activities and confronting Kaur about her conduct. Based on the testimony at the hearing, however, Andrade primarily seeks damages for emotional distress arising from the sexual harassment she suffered from Mota. As noted above, Altamira is strictly liable for the sexual harassment Andrade suffered under FEHA, and liable under a theory of ratification for the sexual battery and assault she suffered.

Andrade testified Mota's conduct caused her fear and depression for months, bouts of insomnia, stress, temporary facial paralysis, and a loss of intimacy with her husband. Hearing Transcript at 40-41. Andrade testified she went to the hospital once because of the facial paralysis, but that the doctor attributed her symptoms to stress and prescribed ibuprofen. *Id.* at 42. Andrade never saw a psychologist or psychiatrist, because she did not want to discuss what had happened to her. *Id.* At the hearing, Andrade did not discuss any symptoms triggering emotional distress arising from her actual termination, 10 months after the incident with Pedro Mota. Yet the Court finds $50,000 in emotional distress damages appropriate given her unlawful termination, and the continuousness and pervasiveness of the harassment when she worked with Mota. *See Kelly-Zurian*, 22 Cal. App. 4th at 409-10 (refusing to disturb a $125,000 compensatory damages award for emotional distress where plaintiff resigned and suffered from panic attacks consisting of anxiety, tightness in the chest and heart palpitations, depression, insomnia, post-traumatic stress disorder). In its discretion, the Court awards Andrade $50,000 in emotional distress damages.

///

### 3. Punitive Damages

Andrade requests a further hearing to determine punitive damages. Dkt. No. 87 at 10. Punitive damages may also be obtained for violations of FEHA. *Commodore Home Sys., Inc. v. Superior Court*, 32 Cal. 3d 211, 221 (1982). Where no contractual violation is involved, punitive damages may be obtained "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a); *Bei v. Santucci*, No. 11-cv-5061 PSG, 2013 WL 458204, at *4 (N.D. Cal. Feb. 5, 2013), *amended on reconsideration on other grounds*, 2013 WL 3786297 (N.D. Cal. July 18, 2013) (using the "clear and convincing evidence" standard in the default judgment context).

"Malice" is conduct intended by the defendant to injure the plaintiff or "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." § 3294(c)(1). "Oppression" is despicable conduct subjecting a person to "cruel and unjust hardship in conscious disregard of" their rights. § 3294(c)(2). Conduct is "despicable" where it is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people…. Such conduct has been described as having the character of outrage frequently associated with crime." *Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 715 (2009) (internal citations, quotations marks, and brackets omitted). "Fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." § 3294(c)(3).

Yet employers will be liable under subsection (a) for employees' action only when: "(1) when an employee was guilty of oppression, fraud or malice, and the employer with advance knowledge of the unfitness of the employee employed him or her with a conscious disregard of the rights or safety of others; (2) when an employee was guilty of oppression, fraud or malice, and the employer authorized or ratified the wrongful conduct; or (3) when the employer was itself guilty of the oppression, fraud or malice." *Weeks v. Baker &*

*McKenzie*, 63 Cal. App. 4th 1128, 1151 (1998); §3294(b).  For corporate employers, "the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."  *Rhynes v. Stryker Corp*., No. 10-cv-5619 SC, 2011 WL 2149095, at *6 (N.D. Cal. May 31, 2011) (citing § 3294(b)).

The motion for default judgment and supporting paperwork do not state whether oppression, fraud, *or* malice are the grounds for granting Andrade punitive damages. Based on Andrade's allegations, Altamira's actions could neither be considered oppressive nor fraudulent.  Andrade does not set out a specific argument for punitive damages, but states in the Proposed Findings of Fact and Findings of Law that Altamira acted with malice because she was terminated soon after her confrontation with Kaur, and because of the failure to investigate Mota's sexual harassment.  Dkt. No. 102 at 23-24.  The Court accepts, as it must, that Andrade was fired in retaliation for attempting to unionize.  The Court also found Andrade showed Altamira's strict liability for Mota's sexual harassment. However, Andrade has not satisfactorily testified or pled facts proving by *clear and convincing evidence* that Altamira ratified or acted with malice regarding either the termination or the sexual harassment.  *See Scott*, 175 Cal. App. 4th at 716 (finding that termination for an improper reason was the only evidence of wrongful conduct against the plaintiff, but that such evidence was insufficient to support finding despicable conduct, "because such action is not vile, base or contemptible," as required to find malice). Accordingly, here, punitive damages are inappropriate.

### 4.  Attorneys' Fees and Costs

Plaintiffs successfully alleging violations of FEHA, a failure to provide accurate wage statements, or receiving less than the legal minimum wage or overtime are entitled to attorneys' fees under California law.  Cal. Gov't Code § 12965; Cal. Lab. Code §§ 226(e)(1), 1194; 29 U.S.C. § 216(b) (attorneys' fees for failure to pay overtime under federal law).

Andrade requests $66,335.00 in attorneys' fees incurred by Kletter + Nguyen Law

LLP, and $2,722.47 in costs under Labor Code § 1194 and Government Code § 12965. Dkt. No. 102 at 26 (updated attorneys' fees and costs as of October 13, 2016). According to the firm's billing summary produced to the Court, attorney Cary Kletter worked 47.2 hours, and requests a rate of $700.00: $15,400.00; attorney Sally Trung Nguyen worked 63.3 hours, and requests a rate of $450.00: $17,910.00; paralegal Sandra Beltran worked 21.4 hours, and requests a rate of $100.00: $2,140.00; paralegal Linda Nguyen worked 14.5 hours, and requests a rate of $100.00: $1,450.00; paralegal Kenia Contreras worked 10.4 hours, and requests a rate of $100.00: $1,040.00; and paralegal Vanessa Gonzalez worked 1.8 hours, and requests a rate of $100.00: $180.00. Dkt. No. 102-1 at 107. Andrade's attorneys itemized the hours worked on her case, and presented that information to the Court.

District courts calculates awards for attorneys' fees using the lodestar method, which is calculated by multiplying the number of hours a prevailing party "reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp*., 244 F.3d 1145, 1149 (9th Cir. 2001)). While the amount calculated under this method is "presumptively" reasonable, a court may adjust the fee to account for other factors. *Id*. Affidavits by plaintiffs' attorney "regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990).

First, the Court finds that the number of hours the Kletter firm attorneys and paralegals worked on this case were largely reasonable. There was no duplication in efforts by the firm in the billing records produced to the Court. However, the Court does find that the amount of time attorney Kletter spent preparing for the hearing on the motion for default judgment on September 7 excessive. Dkt. No. 102-1 at 108. The Court considers five hours of preparation for that hearing appropriate instead. Also, because the hearing could not be held on September 7 because Andrade's attorney's failed to produce a

United States District Court
Northern District of California

court certified interpreter, the Court strikes the 2.7 hours attorney Kletter spent in meeting with Andrade and coming to court that day.  *Id.*  As for attorney Nguyen, the Court cuts the 13.8 hours spent on reviewing Arby's motion to dismiss, writing the opposition to that motion, and reviewing both the reply and the Court's final order on that motion.  Dkt. No. 102-1 at 109.  The Court considers this reduction in hours appropriate because Arby's was represented by its own counsel, and its liability was separate from Altamira's.

As for the hourly rates charged, the Court also finds the amounts requested by attorneys Kletter and Nguyen excessive.

In a declaration to the Court, Kletter stated he had over 20 years of experience in civil litigation, and had spent the last 12 years focusing his practice on a wide variety of employee representation in state and federal court.  Dkt. No. 87-1 at 6-7.  Responding to the Court's order for further information, Kletter produced an order by California Superior Court, San Mateo County Judge Don R. Franchi, where the judge awarded Kletter attorneys' fees at a rate of $650 per hour.  Dkt. No. 104 at 4.  However, no discussion follows the one-page order justifying awarding Kletter such an hourly fee.  The Court is unconvinced awarding even the $650 Kletter was awarded in the state court case is appropriate under the circumstances.

In similar cases in this district with attorneys with similar experience, the amount awarded has been substantially less than $650 or $700.  *See e.g.*, *Gonzalez v. Rest*., No. 14-cv-03099 BLF, 2015 WL 4481978, at *5 (N.D. Cal. July 22, 2015) (finding a partner's hourly rate of $375, associate's rate of $200, and paralegal's rate of $50 reasonable based on partners, associates, and paralegal's hourly rates with similar experience in the Northern District of California); *Telles v. Li*, No. 11-cv-01470 LHK, 2013 WL 5199811, at *15 (N.D. Cal. Sept. 16, 2013) (finding attorney's hourly rate of $300 "reasonable" given the attorney's sixteen years of experience); *Hernandez v. Martinez*, No. 12-cv-06133 LHK, 2014 WL 3962647, at *14 (N.D. Cal. Aug. 13, 2014) (finding reasonable a first-year associate's hourly rate of $200 and an attorney with sixteen years of experience's hourly rate of $425, and noting that both rates were below that year's Laffey Matrix); *see* USAO

1   Attorney's Fees Matrix, 2015-2016 (setting hourly rates for attorneys with six to seven

2   years of experience at $332 per hour, and $504 for attorneys with 16-20 years of

3   experience).

4          Based on these authorities, the Court finds that a more appropriate figure given the

5   complexity of the case, Kletter's experience, the Court's location in the San Francisco Bay

6   Area, would be $550 per hour.  For the same reasons, the Court finds that a rate of $450

7   per hour for attorney Nguyen, admitted to the California Bar in 2009, is also excessive.

8   The Court notes it did not receive a declaration regarding attorney Nguyen's qualifications.

9   The Court finds that a $350 per hour rate adequately compensates Nguyen based on her

10  experience.  Lastly, the Court finds that the $100 per hour rates requested for paralegals

11  Linda Nguyen, Sandra Beltran, and Kenia Contreras are reasonable, though it also did not

12  receive any documentation regarding their qualifications.  *Aguilar v. Zep Inc*., No. 13-cv-

13  00563 WHO, 2014 WL 4063144, at *6 (N.D. Cal. Aug. 15, 2014) (finding a $180 per hour

14  rate reasonable for paralegals in a labor case).  As for the 1.8 hours worked by paralegal

15  Vanessa Gonzalez, the Court strikes this request because the entirety of Ms. Gonzalez's

16  work on this case relates to the failed attempt to retain a Spanish interpreter for the

17  September 7, 2016 hearing.  Dkt. No. 102-1 at 112.

18         Based on the above discussion, the Court considers the appropriate award of

19  attorneys' fees to be:

20         • Attorney Kletter: 38 hours at a rate of $550 per hour = $20,900.00

21         • Attorney Nguyen: 49.5 hours at a rate of $350 per hour = $17,325.00

22         • Paralegal Sandra Beltran: 21.4 hours at a rate of $100.00 per hour:

23            $2,140.00;

24         • Paralegal Linda Nguyen: 14.5 hours at a rate of $100.00: $1,450.00; and

25         • Paralegal Kenia Contreras: 10.4 hours at a rate of $100.00: $1040.00.

26         Accordingly, the Court awards Kletter + Nguyen Law LLP $42,855.00 in attorneys'

27  fees and its full costs: $2,722.47.

28

United States District Court
Northern District of California

Case No. 15-cv-03175 NC            32

United States District Court
Northern District of California

## IV.  CONCLUSION

The Court awards Andrade $72,962.63 against Altamira, broken down in the following manner:

1. $3,304.60 for failure to provide meal breaks;

2. $24.63 in unpaid minimum wages;

3. $359.07 in unpaid overtime;

4. $408.33 in liquidated damages under the FLSA and Cal. Labor Code § 1194.2;

5. $2,850.00 for failure to provide accurate wage statements;

6. $2,640.00 in waiting time penalties;

7. $13,376.00 in backpay; and

8. $50,000.00 in emotional distress damages.

In addition, the Court awards Kletter + Nguyen Law LLP $42,855.00 in attorneys' fees and $2,722.47 in costs.  Appendix 1, attached, details the Court's calculations regarding the overtime reflected on Andrade's paystubs, as well as the total hours worked and wages earned over the last year of Andrade's employment.  The Court denies default judgment as to all other counts, and does not award punitive damages against Altamira.  The Court will enter judgment in accordance with this order.

**IT IS SO ORDERED.**

Dated:  December 12, 2016          _____
                                                   NATHANAEL M. COUSINS
                                                   United States Magistrate Judge

Case No. 15-cv-03175 NC          33